Filed 11/12/14  P. v. Molea CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C074443 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F6880) |
| v. | |
| JOHN GENE MOLEA, | |
| Defendant and Appellant. | |

A jury found defendant John Gene Molea guilty of six counts of lewd acts with a child under age 14 (Pen. Code, § 288, subd. (a); counts 1 and 3 through 7; unless otherwise stated, statutory references that follow are to the Penal Code) and failure to notify law enforcement of a change of address (§ 290, subd. (b); count 8).  The jury found true an allegation that he had committed lewd acts upon more than one victim.  (§ 667.61, subds. (b), (e)(4).)  The trial court granted defendant's motion for acquittal on a count of oral copulation of a child age 10 years or younger.  (§ 288.7, subd. (b).)

1

In a bifurcated proceeding, the trial court found that defendant had two prior lewd acts convictions that presently were alleged as strikes (§§ 667, subds. (b)-(i), 1170.12), as a prior serious felony conviction (§ 667, subd. (a)(1)), and as a prior sexual offense (§ 667.61, subds. (a), (d)(1)). The court further found that defendant had served a prior prison term. (§ 667.5, subd. (b).)

Defendant was sentenced to prison on count one for a determinate term of six years (five years per § 667, subd. (a)(1) plus one year per § 667.5, subd. (b)) plus a consecutive indeterminate term of 75 years to life (25 years to life per § 667.61, subds. (a), (d)(1), tripled per § 1170.12, subd. (c)(2)(A)(i)). On counts 3 through 7 he was sentenced to five consecutive terms of 75 years to life. On count 8, he was sentenced to a consecutive term of 25 years to life (per § 1170.12). The aggregate term of imprisonment is six years plus 475 years to life.

We note that the sentencing minutes incorrectly state that the count 8 sentence is imposed pursuant to section 667.61, subdivisions (a) and (d)(1), rather than sections 667, subdivisions (b) through (i), and 1170.12. The count 8 offense, a violation of section 290, is not among the crimes listed in section 667.61, subdivision (c). The trial court is directed to correct the minutes to reflect a sentence pursuant to sections 667, subdivisions (b) through (i), and 1170.12. The error is not repeated on the abstract of judgment.

On appeal, defendant contends his trial counsel rendered ineffective assistance during his cross-examination of victim C.H. when he elicited evidence that proved the elements of the count 3 lewd acts offense. We affirm the judgment.

FACTS AND PROCEEDINGS

*Prosecution Case-in-Chief*

The prosecution case on count 3 consisted primarily of the testimony of Debra H., her daughter C.H., their friend Sarah Googe, and, per Evidence Code section 1108, the victims of an uncharged incident and of an incident for which defendant previously had

2

been convicted. Because defendant's contention involves count 3 and, to a lesser extent, count 1, the facts of counts 2 and 4 through 8 are not at issue and need not be set forth in this opinion.

In fall 2011, Debra H. lived in Anderson with her husband, her three children including nine-year-old C.H., and an adult roommate. Debra met defendant in July 2011 through mutual friends John Googe and his daughter Sarah. Defendant resided with the Googes at their home in Happy Valley. Debra testified that she and defendant "had become friends. He would come over to the house, stay on the weekends. He went on family outings with us." C.H. and her brother sometimes stayed with defendant at his residence.

C.H. was 11 years old at the time of trial. She testified that it is "safe" to touch a person on the "shoulders" or on "their hand." Conversely, other parts of the body are "unsafe to touch," specifically, the "boobs" and the "vagina."

C.H. testified that defendant "touched [her] in an unsafe way" two times. The first incident (count 1) occurred after she came home sick from school. Defendant was at C.H.'s house to babysit while her parents were at a doctor's appointment. C.H. initially testified that defendant touched her "private area" on the "top half" of her body but later stated that he touched her "bottom half," specifically, "[her] vagina."

The second incident (count 3) occurred when C.H. stayed overnight at defendant's residence in Happy Valley. Debra testified that C.H. spent the night "only once." C.H. recalled that John Googe and C.H.'s brother were present.

C.H. testified that she went into defendant's bedroom. There was no furniture except the bed. She was in the bedroom when defendant touched her. The prosecutor asked, "And did he touch you in your private area?" C.H. answered, "I can't remember."

On cross-examination, defense counsel tried to get C.H. to provide a more complete description of the incidents of "unsafe" touching by defendant. C.H. repeatedly refused to answer counsel's questions or claimed she could not remember what had

3

happened. For example, when asked, "How did [defendant] touch you?" C.H. answered, "I don't know." When counsel followed up by asking if defendant had used "one of his hands," C.H. responded, "I don't know and I don't care."

When defense counsel asked whether C.H. was standing up or sitting down, C.H. answered, "Oh, my God." The trial court repeatedly admonished C.H. to answer the questions even though she did not want to. When the court asked C.H. whether, when she is at home, she sometimes has to do things she does not want to do, C.H. candidly said that she "[doesn't] listen" to what her parents tell her. C.H. repeatedly refused the court's direction to answer whether she had been sitting or standing.

Later, when defense counsel questioned C.H. about the alleged incident of molestation at defendant's residence, C.H. refused to answer counsel's questions, stating, "I already answered that. God." When counsel asked what happened at defendant's residence, C.H. said, "I'm not going to [answer] if I don't want to." At the prosecutor's request, the trial court ordered a recess.

Following the recess, defense counsel tried to get C.H. to describe with more particularity what allegedly had happened at defendant's residence but the prosecutor interposed a series of objections. When the court told C.H. that she needed to "make a full effort" to answer counsel's questions, C.H. responded, "If I don't want to answer them, I don't have to answer them. It's my choice." Later, C.H. said, "[i]f one lawyer already asked me something, I'm not going to answer it again."

After another recess, C.H.'s older sister was permitted to be with her at the witness stand. When defense counsel asked C.H. how long the "unsafe touching" at defendant's residence had lasted, C.H. said, "[w]hat the hell? I said I don't know." In response to the question, "[h]ow did [defendant] touch you on this second incident," C.H. responded, "Oh, my God. I'm not answering that because I already told you. You already asked me that and I'm not answering that again so get used to it."

4

After C.H. was excused for the evening, the trial court addressed the jury regarding the difficulties counsel was having getting C.H. to answer questions. The court advised that "it is the obligation of both counsel to try to get meaningful answers to all the necessary questions from their perspective" and that "the defense has a right to test the recollections, the recollection capacity of a witness, the understanding capacity of any witness--and particularly, a child witness--and to basically seek to test the credibility and the capacity of the witness."

The next morning, C.H. again asserted that she was unwilling to answer questions she already had answered. Using a Mickey Mouse doll as a reference, defense counsel questioned C.H. about when defendant "touched [her] in a bad way when [she] was ill" and at her residence. The court asked C.H. to "point to the area of the body that was touched" and "if there was more than one, point to the first one." C.H. touched "in between Mickey's legs on the body part of Mickey." C.H. said it was "a bad touching" and "unsafe."

Defense counsel then questioned C.H. about her testimony that there had been "another bad touching" or "unsafe touching." When defense counsel asked C.H. to show on the doll where the second touching occurred, she gave a physical indication of what counsel described as "the vaginal area between the legs of that doll." C.H. indicated that the second touching occurred at John Googe's (defendant's) house. She believed the touching was on purpose.

### *Defense*

Defendant acknowledged that he babysat C.H. and her brother on one occasion when Debra and her husband went to a medical appointment. Defendant said he was alone with the children for only 15 to 20 minutes until their older sister came home from school. Defendant testified that C.H.'s accusation of molestation was "unbelievable." He said that C.H. was watching television and her brother was playing video games.

Defendant testified that he had promised Sarah Googe that he would not reveal her heroin addiction to anyone. But contrary to his promise, he later disclosed the addiction to Debra and her husband. After defendant did so, C.H. and her brother accused defendant of molestation. When pressed as to why they had made the accusation, the brother told defendant it was because he had "told Sarah" that he would not reveal her secret.

DISCUSSION

*Defendant has not Shown Ineffective Assistance of Counsel*

Defendant contends his trial counsel rendered ineffective assistance during his cross-examination of C.H. when he "prov[ed]" the otherwise unproved count 3 offense. He argues that, by the end of the direct examination, C.H. had been unable to identify with "sufficient specificity" (*People v. Jones* (1990) 51 Cal.3d 294, 316 (*Jones*)) what defendant had done to her at his residence; trial counsel's ensuing cross-examination was deficient because it "provided the needed specificity." We disagree.

1. *Relevant Legal Principles*

"[S]ection 288, subdivision (a), states [that it is] a felony offense for any person who 'willfully and lewdly commits any lewd or lascivious act' on the body of a child under the age of 14, 'with the intent of arousing . . . the lust, passions, or sexual desires of that person or the child.' Any touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the victim. [Citation.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*); italics omitted.)

In *Jones, supra*, 51 Cal.3d 294, the Supreme Court described the evidence necessary to satisfy due process concerns as follows: "The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of

6

proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id*. at p. 316.)

Defendant claims his trial counsel's cross-examination, which assertedly provided the needed specificity, constituted ineffective assistance. "[A] conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes *both* of the following: (1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.] If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails. Moreover, ' "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 (*Rodrigues*).)

## 2. *Analysis*

C.H. testified on direct examination that defendant "touch[ed] [her] in an unsafe way" two times. She identified the parts of the body that are "unsafe to touch" as the "boobs" and the "vagina." She testified that the first (count 1) touching involved defendant's "hand" but not his "foot"; she never suggested that the second (count 3)

7

touching involved any other body part of defendant. There was no suggestion that the claimed lewd conduct (unsafe touchings of the breast or vagina) consisted in fact of intercourse, oral copulation, or sodomy. Jurors reasonably could infer that the two counts involved similar physical acts involving defendant's hands. This was sufficient to differentiate between *types of proscribed conduct*. (*Jones, supra*, 51 Cal.3d at p. 316.)

C.H.'s testimony on direct examination of touchings of the breasts *or* vagina was sufficiently specific to assure that *unlawful conduct indeed occurred* in count 3. (*Jones, supra*, 51 Cal.3d at p. 316; *Lopez, supra*, 19 Cal.4th at p. 289 [any touching with requisite intent of child of requisite age is sufficient].) C.H.'s claims, later in the direct examination, that she did not remember whether defendant had touched her "in [her] private area" did not negate the earlier testimony of two "unsafe" touchings defined as touchings of the breast or vagina. Jurors reasonably could accept C.H.'s first assertion while rejecting her second assertion as stemming from her increasing discomfort with the proceeding. C.H.'s testimony was sufficient to identify *the kind of acts committed.* (*Jones, supra*, 51 Cal.3d at p. 316.)

C.H.'s testimony on direct examination that defendant "touched [her] in an unsafe way" two times described the *number of acts* committed with sufficient certainty to support each count alleged with respect to C.H. in the second amended information. (*Jones, supra*, 51 Cal.3d at p. 316.)

Finally, C.H.'s testimony that count 3 occurred when she stayed overnight at defendant's residence in Happy Valley, coupled with Debra's testimony that she first met defendant in July 2011 and that C.H. spent the night at his residence "only once," established that count 3 was committed within the eight-year limitations period that preceded the May 2013 trial. (§§ 288, subd. (a), 800; *Jones, supra*, 51 Cal.3d at p. 316.)

It is not necessary to determine whether trial counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies. (*Rodrigues, supra,* 8 Cal.4th at p. 1126.) Because C.H.'s direct

8

examination was sufficiently specific within the meaning of *Jones, supra,* 51 Cal.3d 294, trial counsel's flushing out of many additional details during his cross-examination of the extraordinarily challenging and difficult witness, did not supply essential proof of the count 3 offense. Contrary to defendant's argument, trial counsel was not "responsible for providing the proof necessary to sustain [defendant's count 3] conviction." Even if somehow deficient under an objective standard of reasonableness, trial counsel's performance could not have been prejudicial. (*Rodrigues, supra*, 8 Cal.4th at p. 1126.)

DISPOSITION

The judgment is affirmed. The trial court is directed to correct its minutes to reflect a count 8 sentence pursuant to sections 667, subdivisions (b) through (i), and 1170.12.

       HULL       , J.

We concur:

     RAYE     , P. J.

     DUARTE     , J.